Lewis J. Espin, counsel for appellant Brandon Sattler, Talitha Gray Kozlowski, counsel for appellees James Russell, Julie Russell, and Grant Witcher, Ryan J. Works, counsel for appellees Joseph and Mary Cassidy, Jeanette McPherson, counsel for appellee Shelley D. Crone, Chapter 7 trustee. Okay, is the appellant ready to proceed? Yes, your honors. Okay, would you like to reserve some time for rebuttal? Yes, your honor. We'd like to reserve five minutes for rebuttal, and if there's any time left of the first ten minutes, we'll reserve that for rebuttal as well. Okay, so we'll let you know when we're getting on to five minutes, okay? Thank you very much, your honor. Okay, you may proceed. Good morning, your honor. I've been pleased to the court. My name is Lewis Espin, and along with my co-counsel, Richard A. Marcus, who's also here with me in my office, we are counsel for the alleged debtor and appellant, Brandon Sadler. I want to begin by saying that the legislative history of Section 303 shows that from the inception, Congress intended that a bona fide dispute as to either liability or the amount of a claim be sufficient to qualify the creditor holding such claim from qualifying as a petitioning creditor in an involuntary case, and that's the QDOS case. The burden of proof is squarely on petitioning creditors. Under BAPT CPA in 2005, Congress strengthened the protections for alleged debtors against the abuses that had befallen them, which we find in this case. Can I ask you a question to make sure we're all on the same page? Yes, your honor. The scope of the appeal, this is an appeal from the denial of a motion to vacate. Correct, your honor. It was brought after the time to appeal all the other orders with respect to the order for relief and the summary judgment and the motion to dismiss. Correct, your honor. What are we entitled to review here? Well, what you're entitled to review here is, we know that the bankruptcy court reviewed the entire record, because when Judge Landis gave his rather lengthy pronouncement of his decision to deny the motions to vacate, he went through all of the documents and documentation in the record. So, I believe that Judge Landis put the entire record before the court. And what I would focus on, what I'd like to focus on are, there are three cases that I find critical when I appear before your honors or either in your role before the BAPT or as jurists, as bankruptcy court judges. I always look to the Espinosa case, the Perez case, and the Dynamic Brokers case. To me, those three cases are the three critical cases that tell the bankruptcy court judge that you are the gatekeeper. You are there to make sure that the integrity of the bankruptcy code, the rules, and the system are maintained. In this instance, we believe that Judge Landis failed in his role as a gatekeeper. That his role was to determine whether or not the bankruptcy code had been properly applied under Section 303. And we know from his decision that he did not. Because, for example, he says that the summary judgment motion was unopposed. Well, we know that a motion to dismiss was filed on behalf of Mr. Sadler, which the petition responds to the summary judgment. So we know that at the time that Judge Landis granted summary judgment, he ignored the motion to dismiss. And he ignored the issues that were raised in the motion to dismiss. What I think it's important to do is there's a decision that has some very critical nomenclature in it, especially for today. And that's the McDowell v. Calderon decision that's actually cited in the trustee's opening brief. And that's 197F3R1253. And why is that decision so important today? Because it says that the law of the circuit is that denial of a Rule 60B1 motion does not entail review of the merits of the underlying judgment unless the underlying judgment is infected by clear error. So here we are today in a virtual oral argument for the BAP. Why? Because there's a contagion about. And so how appropriate that we are sitting here today, how ironic it is that we're sitting here today separated because of an infection. And the Ninth Circuit in the Calderon case in 1999 talked about a decision that is infected by clear error. So where is the infection in this case? And I think it's appropriate to look at that. So the infection in this case lies in the fact that it began with an involuntary bankruptcy petition that was filed by the Russell saying that we're three qualified creditors and yet they were not. So there begins the contagion. The contagion begins with the involuntary petition and that it was filed improperly by three unqualified creditors. You do not have three creditors. And the contagion spreads because then Judge Landis doesn't apply the Nevada Revised Statute. And the Nevada Revised Statute, as cited in our brief, states that, and I believe that's NRS 104.3110, says that when you have an instrument payable to, I'm going to summarize, payable to one or group that's not identified separately, it's one obligation. And in fact, when you look at the involuntary petition and the documents attached to it, we know that the Russells refer to themselves as the lender. So they refer to themselves as one entity. Can I ask you a question about that? Does that mean that, for example, only one party could sue on that obligation? You can only sue on, well, I would say yes, you can name them all, but they only have one interest. If they want to sue on the note, okay, and you've got three different people and you're telling me it's one obligation, does that mean that only one of those parties can sue on the note or any of them can? All three must. All three must. And their own documents say that the payments are made to the lender. So they have made an admission that they are one lender. There is an admission in the documents that they are one lender. And so Judge Landis, having been infected by the involuntary petition, then makes the mistake of not applying the Nevada statute properly. And as the gatekeeper, that was his job. That's a mistake of law, right? That's a mistake of law. Okay, so he makes a mistake of law under 60 v. 1 or 6 after the appellate time. How do we get to do that? Because when he goes back... I will say he didn't think you could. So go ahead and give me the response to his reading of Plotkin. Well, I think that when you take the Espinoza and the Perez case and the Dynamic Brokers case, he had an obligation then, and he has an obligation at the time of the motion to vacate. That's his job. His job is to make sure that the Bankruptcy Code is properly applied. And he didn't do it. But shouldn't you have filed a Notice of Appeal of any of those decisions rather than having what characterizes a get-out-of-jail-free card for failing to file a Notice of Appeal on time? I'm glad you brought that up, Your Honor, because one of the issues that came up in the motion to vacate was that this preservation order denied Mr. Sattler access to his post-petition earnings. And as all of you know, under Bankruptcy Code Section 541A, post-petition earnings are not property of the estate. And so that it was an improper, once again, an improper application of the Bankruptcy Code that denied Mr. Sattler access to his own earnings. Had Mr. Sattler had access to his earnings during the course of the involuntary bankruptcy case, then he could have retained counsel to file the appeal. We do know that the law says that it's not an unreasonable delay, and there's a reason, there's an excuse for it. The petitioning creditors, the trustee, and the court all imposed a restriction upon Mr. Sattler, which as a matter of law, Congress said, Congress said, he has a right to his post-petition earnings. You cannot impair his right to those petition earnings. They denied that right, he would have been held in contempt, and he couldn't hire counsel to file the appeal. Why didn't any of them say, Mr. Sattler, you only have 14 days from the date that I order to file an appeal? Did I have the chronology correct? When did Mr. Sattler first raise the argument about his earnings, and he should have had access to some funds? When did that come up? Do you remember? I believe that was the January, it's in our reply brief, Your Honor. It could have been. He came up at the January hearing? I don't think he attended the January 14th hearing, right? I apologize. I know that he brought it up, we quoted the transcript, where Mr. Sattler says, I can do my own. I can go back. That certainly was March 1, I got you. I wasn't sure if it was before March 1. I don't think so. I think it was March 1, where he said, you know. You're closing in on five minutes, is this a good time to take a break? Or do you want to take a little more of your time? It sounds like you know where my case is. My analogy about the infection, you understand where I'm coming from, the coronavirus. I'll reserve the rest of my time. Thank you very much. Thank you very much, Your Honor. Okay, thank you. Thank you. May it please the Court to leave the Great-Kaslavsky on behalf of the petitioning creditors. Your Honor, you raised a good point at the outset, which is simply, this is an appeal from a motion to vacate the orders under 59 and 60. The reason the Bankruptcy Court was compelled to go through the record was because the appellant raised clear error. The appellant cited to all of the record, all of the appellant, the totality of their arguments were premised on whether or not the Bankruptcy Court properly applied 303. And so because of that, it did compel the Bankruptcy Court to go through the record. And notably, the Bankruptcy Court went through the record a second time and determined that there was no clear error. The test before this Court is to determine whether the Bankruptcy Court abused its discretion in determining that. I'd like to start with the contention that Mr. Sattler was precluded from retaining counsel. So first of all, it's important to, I think, recognize that Mr. Sattler did have counsel at the time, at the preservation order hearing. He did have counsel when the motion to dismiss was filed, and he was still represented when the opposition and the motion for summary judgment were filed. Mr. Sattler's counsel withdrew after he attempted to sell a state property and concealed it from his counsel, and as Goldsmith and Gunn expressly said, he ignored their legal advice with respect to the preservation order. It was his actions that caused his counsel to withdraw. Importantly, in connection with that, the Bankruptcy Court continued the hearings out so that the motion to dismiss and the motion for summary judgment, instead of being heard in January, were heard in March. So the Bankruptcy Court was cognizant and ensured that Mr. Sattler had ample time to retain counsel. In fact... Well, that was the result, right? Wasn't it originally set for March 1? It was originally set for a different day? I believe it was originally set for a different day, and it was continued for March 1. Okay. Okay. I think thereafter, the record's also clear that in January 10th, Mr. Sattler reached out to me and sent me correspondence saying that he was representing himself and forwarded correspondence from Goldsmith and Guymon that set forth every single date that was coming up, including the March 1 date. There's also additional evidence in the record that Goldsmith and Guymon advised him of all those dates, and Mr. Sattler said he was going to represent himself. With respect to the preservation order, and that's at Exhibit 2 in Appellant's Excerpts, the preservation order required Mr. Sattler to prepare a budget and that he could then spend funds in accordance with that budget. The preservation order expressly includes legal fees in that. So the argument that the preservation order precluded him from retaining counsel is just simply false. Additionally... Counsel, wasn't there a stipulation with the debtor for the entry of the preservation order? In other words, it was negotiated and he agreed to it, and it was his budget that was approved. That is correct, Your Honor. Yes, that is correct. When you look... Also, when we look at the March 1 hearing, which is the first time that Mr. Sattler raised this argument that he couldn't afford counsel, what Mr. Sattler says is he asked the trustee to give him the proceeds from the house that he sold in violation of the court's order. That is the totality of the funds he says he asked for. There is nowhere in the record of any evidence that Mr. Sattler couldn't use other funds in order to retain counsel. In fact, what the bankruptcy court also had in the records before him was Mr. Sattler's own admission during his deposition that, quote, he had been using cashier's checks for, quote, gambling, casino gambling, or to pay bills, a number of reasons, mainly casino gambling, but I've had them for lots of purposes, some to pay people I own money to, and some to pay bills, and that's at Exhibit 17, page 8, and Exhibit 18 at page 37. So, again, the argument that Mr. Sattler did not have access to funds is simply false. The fact that he chose to use those funds for gambling instead of retaining counsel is entirely within his control. That would be effective after the date of the preservation order, as opposed to that's the reason why the preservation order was entered? That was after the preservation order was entered. Yes. Yes. Additionally, Mr. Sattler showed up with three separate cents of counsel about a month later, so an argument that he couldn't get counsel because he didn't have funds is, again, just simply incorrect. There is no evidence of manifest injustice. There is no extraordinary circumstance. For whatever reason, Mr. Sattler chose not to get counsel. He made that decision, but there was nothing that precluded him from doing so. With respect to the argument of legal error, I think it's important to actually talk about what the bankruptcy court had before it. So, if we look at the motion to dismiss, which is at Exhibit 3, the argument that Mr. Sattler made was that Mr. Russell was an eligible creditor. He acknowledged he was an eligible creditor. He then argues that there's a failure to meet numerosity, and there's a bona fide dispute solely because the promissory notes were not signed by Mrs. Russell and Mr. Whitcher. In response, in the opposition, it is discussed and pointed out, first of all, that the promissory notes allocate a specific obligation to each individual. They each have an undivided, specific interest in each one of those notes. Additionally, the opposition cites at length and provides significant evidence that Mrs. Russell and Mr. Whitcher did have a loan obligation. Among other evidence that was presented were checks that Mr. Sattler wrote to each of them. There were 1099 interest statements that were issued to each of them. There are numerous communications in which Mr. Sattler admits that he lent money to Mrs. Russell and Mr. Whitcher. So, when the bankruptcy court was ruling on the motion to dismiss and was ruling on the motion for summary judgment, it was not that the bankruptcy court simply said, it's unopposed, we're going to grant it. The bankruptcy court looked at the evidence that was before it, which was considerable evidence that countered everything Mr. Sattler asserted. In fact, if you look at Mr. Sattler's declaration, he makes those assertions upon information and belief. He doesn't even provide any documents. He doesn't even affirmatively make them. He simply says they're upon information and belief. Now, counsel, this is a motion for summary judgment, in effect, right? Yes, your honor. So, you don't believe that what Judge Landis was doing here was weighing evidence, correct? No, I don't believe it. It must have been inappropriate. No, I don't believe so. Okay, so tell me, so, you know, Mr. Esmond says it's not true to say the motion was unopposed because it was deemed to be opposed by the motion to dismiss. So, help us out with why this isn't a problem in a summary judgment context. Your honor, the court reviewed the declarations that were before it. The court reviewed the evidence that was before it and determined that there was no genuine issue of material fact. Simply making a statement without any credible evidence is not evidence to overcome a motion for summary judgment. And all Mr. Sattler said was upon information and belief, I don't believe that they are, in fact, properly owed money under the notes. The counter to that, that is not credible evidence. Judge Landis did not find that to be credible evidence. And it does not amount to raising a genuine issue of material fact. And that is the determination that Judge Landis found, is that there is no, excuse me, there was no genuine issue of material fact to the extent that the petitioning creditors held, that the petitioners were owed money that was not disputed as to liability or to amount. It's also important that the bankruptcy court, numerosity was the issue, and the bankruptcy court correctly found that two additional creditors joined. So we have the undisputed acknowledgement that Mr. Russell was an eligible petitioning creditor. And then we had two additional creditors join as well. So with both of those joining, you know, we certainly, the undisputed evidence was that numerosity was satisfied. Again, I'd like to, I'd like to sort of reiterate, again, the context. So we have been talking about the substance, obviously, of what was ordered, because I do think it's important to acknowledge what was before the court. But what is before this court is the determination of whether the bankruptcy court abused its discretion in denying a motion to reconsider its order. And in this instance, bankruptcy court properly, properly considered the arguments, properly determined that there was no clear, properly determined that you cannot use 60B1 as a means of appealing a matter when you failed to appeal it. It is not a circumvention of the appellate rules. And there is absolutely no abuse of discretion in determining that simply arguing clear error is not an effective means, is not a permissible means under B1. And that's made very clear. It's not a substitute for appeal. And that's made very clear in the Atkins case. I think I will turn it over to the trustee here for her last two minutes. OK, thank you. Thank you. Good morning, your honors. Jeanette McPherson on behalf of Appellee Shelly D. Crone, trustee. I'll try not to duplicate Ms. Kozlowski's arguments. But what we're hearing and we've seen in the pleadings is essentially appellants attempt to re-argue the issues. That's those are issues that should have been brought up on appeal, not through a Rule 90-23 motion, which was a Rule 60B motion. I think this court has pretty clearly stated that legal error cannot be brought up in a Rule 60B-1 motion unless it was brought within the time for bringing an appeal. So that brings us to Rule 60B-6. And the appellant just hasn't established extraordinary circumstances that caused this issue, circumstances beyond his control that prevented him from proceeding properly. This debtor was involved in what was going on, as has already been stated. So what they're really focusing on is legal error that involves extraordinary circumstances. Let me stop you for a sec. Judge Landis invoked the Plotkin case for the proposition that clear error was not a relevant concept under the context of this 60B motion. But I'm not sure that's the only time the Ninth Circuit's talked about it. And we have found the Ninth Circuit cases to be a little less clear than we might have expected. For example, the International Fibrocom case, citing Liberty Mutual Insurance Company versus EEOC, and the Durga Ma case all say that the district court has discretion to correct a judgment or mistake or inadvertence either on the part of counsel or the court itself. So we're, I mean, Plotkin, I think, says what Judge Landis says it says, but we found the Ninth Circuit law a little harder to get your arms around. Do you want to, can you help me out with that? Yes, your honor. I found the same thing when I was drafting my brief, but I saw that the bankruptcy appellate panel, though, seemed to provide a clear path to say, Well, can you call the Ninth Circuit and tell them we got it right? Yes. And with regards to Fibrocom, the way I read that and to try to make all of these cases mesh was that the legal error has to involve extraordinary circumstances. And in that case, the extraordinary circumstances involved an order that was entered outside the bankruptcy court's authority. What does that mean? And I looked at the language of that case, and I noted that the court was talking about how a trustee is bound by a debtor in possessions actions and the orders that were entered, even if they're inconsistent with the bankruptcy code. So if they're inconsistent, the trustee would be bound. But if they're outside the bankruptcy code, then they could be set aside under Rule 60B-6. That's how I interpret Fibrocom Ninth Circuit law and Rule 60B-6. So with that said, what I think appellate is trying to do is just argue that the judge was wrong, not that the judge acted outside the bankruptcy code. The judge had the authority to rule on the preservation motion and rule under Section 303 based on what he was given. And he did that. It wasn't the situation in Fibrocom where he was asked to have a contract be assumed. That was just not simply assumable. And then there were also some procedural notice issues. So, Your Honor, I don't believe, and I'm sorry, I can't see the clock. You're about 25 seconds over, and you've answered the most important question I had. Thank you, Your Honor. If you want to wrap up, I think we're all set. Okay. Well, Your Honor, for those reasons, we don't believe that the appellant has established what he needs to establish under the Rules 1923 or any of the Rule 60B provisions. Okay. Okay. Thank you. Okay. Thank you. Back to Mr. Esben. Well, I don't think there could be any greater extraordinary circumstances than an involuntary bankruptcy case. This is not summary judgment on a disputed debt. This is not summary judgment on a contract dispute. This is an involuntary bankruptcy case, which Congress amended in 2005 because it's such an extreme remedy. So, I think you have to put this in the context in which it arises. Moreover, in the FiberCon case, the judge realized he made a mistake by granting an order, allowing the assumption of a contract that was not an executory contract. Yeah. You have to recall also that the motion to vacate was filed within 28 days of the entry of the order for relief. So, if you were to ask, if you were to survey people on the street, lawyers, how many days do you have to file an appeal from an order to the bankruptcy court? If you did a survey, they'd say 30 days. It takes a seasoned bankruptcy practitioner, which you have here before you of all these counsel, to know that it's 14 days. I don't think the average practitioner knows that it's 14 days. They would say 30 days. And this motion was filed within 28 days. So, that's a reasonable period of time. And Judge Landis, in his decision, says very clearly, and we put this in our reply brief, I find no error in granting an unopposed, properly supported summary judge motion. So, Judge Landis himself says the summary judge motion was unopposed. Judge Landis himself says, I didn't look at the motion to dismiss. Those are the judge's own words. So, I think what we've done is we've made the argument that you have an extraordinary case here with an involuntary. And the judge needs to look at the involuntary from a much different perspective than a typical summary judge motion. You're talking about involuntary, which irreversibly changes a person's financial future. And that's exactly what's happened here. That's why there's such strict compliance required for the requirements of an involuntary. Of numerosity, of being a qualified creditor, of what's not disputed. How about the other two folks who show up a little bit later? How do we factor that into this? There's only one. There's not two. There's only one. It's a husband and wife. Your position is they're husband and wife, so they're correct. It's not two. When was that argument made? I, you know, your honor, I would assume that it was made in the motion to dismiss. I can't say because I wasn't counseled in. But again, it's the bankruptcy court who's supposed to look at those things. You know, the bankruptcy court, and I keep harping on this, but look, I was the debtor's counsel in the dynamic broker's case. I was a lawyer who the VAP says, no, you can't put into a plan an objection to claim when Congress has a clear scheme and protocol for claims objections. So I know that case very well. You know, I tried something, VAP slapped my hand for it. Judge Smith didn't see it, but the VAP saw it, okay? And so, too, in this case, Judge, I'm sorry, Judge Landis just didn't see it. He didn't see it at the time, and he didn't see it under the motions to vacate. You have clear error. You have infections of error all over this case. And it was an abuse of discretion for him to ignore the clear error and reverse himself, as the judge did in the Fibre Comp case. Okay, you have about a minute left. If you're all set, you can... And under Rule 59, if it's not filed timely, then you default to Rule 60B, and that's how it got to 60B. And so, we've done everything in as timely a manner as possible. We've pointed out to the court the errors that the court made as a matter of law. And you cannot look at this case as a straight-up summary judge motion. This is an involuntary case. And I would say, for my years of practice, most bankruptcy court judges rarely see an involuntary bankruptcy case. And when they do, it really does require a lot more effort of the judge to really roll up their sleeves and take a look at these things. I would say many practitioners today hesitate to file involuntaries because of the risks associated with being wrong. And in this case, the practitioner is wrong, the judge is wrong, and Mr. Sattler should be relieved of this involuntary. The court should reverse and dismiss and vacate all the orders. Thank you very much, Your Honors, for your time. Okay, thank you very much. The matter is submitted. Thank you for your very good arguments. Very interesting case. Good job, everybody. Thank you very much, Your Honors. Have a good day. Be safe out there. Thank you. You, too. Thank you, Your Honors. Thank you, everyone. Thank you. The session now stands in recess.
judges: Lafferty, Brand, Gan